BERTHA ROSENAU v. MAX L. BEAR, *et al.*

158 So. 175.
Division A.
Opinion Filed September 14, 1934.
Petition for Rehearing Denied January 2, 1935.

*D. W. Berry, J. Montrose Edrehi, John Lewis Reese* and *R. Pope Reese,* for Appellant;

*Watson & Pasco & Brown,* for Appellees.

ELLIS, J.—Bertha Rosenau, a widow, exhibited her bill of complaint in the Circuit Court for Escambia County against Max L. Bear, Robert H. Kahn and Lewis Bear, "Executors of the last will and testament of Morris Bear. deceased," and Max L. Bear, Hilda Bear Kahn, and Robert H. Kahn, her husband, and Lewis Bear, individually, and the Lewis Bear Company, a corporation, and Harry Kahn, Jacob Kahn, Hilma Kahn and Jake Bear; all parties residents of Escambia County and over the age of twenty-one years.

The purpose of the bill was to obtain an accounting from certain of the defendants who, it is alleged by complainant in one way or another, in more or less degree, became custodians of a fraud coming from the estate of the complain-

ant's father which should have been divided equally between her brother Jake, her sister Sallie and herself, but which through fraud and deception practiced upon her by her brothers was diverted to their own use, and of which the complainant has been deprived in large part.

. The litigation grows out of the death of Lewis Bear, which occurred in August, 1895. He died leaving five children, whose names were Morris Bear, Sallie Bear, Max L. Bear, Bertha Bear, the complainant, and whose name is Roseneau, and Jake Bear.

The facts about which there seem to be no controversy are substantially as follows:

. Lewis Bear established in Pensacola, many years ago, a successful grocery and liquor business. In 1888 Morris Bear, son of Lewis Bear, having arrived at the age of twenty-one years and completed a college course, was taken by his father into the business and given a one-fourth interest. Afterwards Lewis Bear sold an interest in the business to A. Greenhut and still later, in 1892 or 1893, Max L. Bear, another son, coming of age was given by his father a fourth interest in the business which was then known by the name of Lewis Bear & Company. The extent of the Greenhut interest is not clear.

As the situation existed in August of 1895, the interests in the business were distributed as follows: Lewis Bear, one-half; Morris Bear, one-fourth; Max L. Bear, one-fourth, and A. Greenhut, a "working interest" based on the earnings from his labor and a percentage of the profits accruing to the business. From a copy of a contract attached to the answer of several of the defendants the original appearing in evidence as "DEFENDANTS' EXHIBIT 5.. Identified by Mr. Klein," the interests in the business were distributed as follows: Lewis Bear, $67,627.09; Morris Bear, $17,418.75; A. Greenhut, $17,266.92. That contract

showed that Max L. Bear was given an interest by his father amounting to $17,627.09, which was deducted from the interest of Lewis Bear of $67,627.09, leaving to him an interest amounting to $50,000.00 upon which he was to be paid six per cent. interest per annum out of the profits of the business, the remainder to be distributed equally between Morris Bear, Max L. Bear and A. Greenhut. The contract was dated February 1, 1895, and is attacked by complainant as void for lack of authenticity and other reasons among which were that at the date of the alleged contract Lewis Bear was mentally incompetent and was unduly influenced by Morris Bear to enter into the agreement. That point is covered by the ninth and tenth questions stated in the brief to be involved, the theory of complainant being that the alleged agreement was a fraudulent contrivance of Morris and Max Bear to deprive the other three children of Lewis Bear of their full interest in the personal estate of their father.

In July or August of 1895, a few months after the date of the alleged agreement, Lewis Bear died intestate. His wife had predeceased him. Morris Bear was appointed administrator of the estate of his father.

The bill alleges that about four and a half years after the death of Lewis Bear, Morris and Max Bear purchased the interest of A. Greenhut in the business using the "funds and assets" of the business for that purpose, so that, according to the bill of complaint, the ownerhip of the business stood as before, to-wit: one-fourth interest in Morris Bear, one-fourth in Max Bear, and one-half interest in the three remaining children, Sallie Bear, who married Harry Kahn, Jake Bear and the complainant, Bertha Bear, who married Rosenau.

In 1901 Morris Bear incorporated the business giving the name of Lewis Bear Company to the corporation. The cap-

ital stock of the corporation was one hundred and fity thousand dollars, divided into fifteen hundred shares, all of which, except two shares, was taken by Morris and Max Bear. Of the two remaining shares, one share was assigned to Jake Bear and one share to Sam Rosenau, husband to complainant.

It is alleged that Morris Bear never completed the administration of his father's estate. That fact seems to be established by the evidence.

It is alleged that Morris Bear, as administrator, never made an accounting of his father's estate, nor was he ever discharged from its administration, and that he failed to turn over to the complainant her part of her father's estate which came into the administrator's hands, or that should have come into his hands, and never accounted to her for her interest in the estate "except a portion of the cash money as she is advised left by Lewis Bear."

A short time before the death of Lewis Bear the complainant married Samuel Rosenau.

The bill alleges that about a year after the death of her father, Morris and Max Bear told complainant that they had purchased from their father his interest in the business. It is alleged on information and belief that they also purchased the interest of Greenhut after the death of their father, which interest had been sold to Greenhut by Lewis Bear; that complainant having every confidence in the honor of Morris and Max Bear, her brothers, and being young, inexperienced and ignorant of such business transactions, accepted the statements as true.

It is definitely alleged that the interest in the business given by her father to Morris and Max Bear was given in full settlement of their part and portion of his personal estate. In other words, that it was an advancement to them and that therefore at the time of the death of Lewis Bear

the other three children, Sallie, Jake and the complainant inherited all the personal estate he possessed.

It does appear to be established by the pleadings and evidence that upon a division of the personal estate of Lewis Bear each of the five children shared equally, the complainant alleges that in the year 1918 or 1919, about ten years before the filing of the bill of complaint, the complainant became advised of her alleged rights and confronted her brothers with their deception, and that she learned from them by their confession that they had not bought their father's interest in the business before his death; that at his death he did own a half interest in the business. So she made request of her brothers Morris and Max for a settlement of her interest in her father's estate which was carried into the corporation which had been formed by her brothers and had grown proportionately with their interest to a very large value.

It is alleged that her brothers then told her that they intended and would settle with her in full and turn over to her her share of her father's interest in the copartnership and the corporation into which the copartnership had merged; that pursuant to that agreement they agreed to pay her one hundred dollars per month on account of the earnings of her interest in her father's estate until that interest could be certainly ascertained from the books of account; that her brothers then urged her not to withdraw her entire interest from the business because the withdrawal of such a large sum might have a bad effect on the business, and so they paid her, as they agreed, one hundred dollars per month for about ten years until December 28, 1928, when Morris Bear died. After which date the payment of the one hundred dollars per month to her was continued by Max Bear and the son and daughter of Morris Bear, whose names

were Lewis Bear and Hilda Bear Kahn, and the executors of Morris Bear's will.

It is alleged that the business of Lewis Bear and Company and the corporation into which it merged has been successfully managed and grown to become very valuable; that both Morris and Max Bear have built or accumulated large fortunes from it; that the profits to the business under the management of Morris and Max Bear have amounted from the date of the death of Lewis Bear to the present time to the sum of approximately two million dollars, which the two brothers have appropriated to themselves.

It is also contended by the complainant that as the one-fourth interest in the business established by Lewis Bear which Morris and Max each held was an advancement by their father to them of their share in his personal estate they should not have shared equally with the complainant, her sister Sallie and brother Jake, in the distribution of Lewis Bear's estate, but the personal estate should have been divided between the complainant and her sister and brother Jake; that instead of receiving a fifth interest she should have received a third interest in the estate.

That made a difference of approximately seven thousand three hundred dollars against the complainant. This is on the theory that as Morris and Max had received their share of their father's personal estate from him by way of advancement in the form of a fourth interest each in the business they should have brought the value of such advancement into hotchpot before sharing in the estate which was left.

The substance of the case may be stated as consisting of the wrongful schemes and fraudulent conduct of the complainant's two brothers toward the complainant in the matter of their handling and management of the personal estate of which complainant's father died possessed and

which came into their hands as his surviving partners, or as personal representatives of him and of which estate they were trustees for the complainant and her sister Sallie and brother Jake.

The bill of complaint, however, continues with many more pages of allegations of fact consisting of repetitions and full descriptions of the business and its successful operation and the alleged covin of the two brothers, Morris and Max, and the complainant's youth, ignorance and innocence of the "ways that are dark and tricks that are vain" which are, according to her bill, sometimes practiced by brothers upon innocent and trustful sisters to defraud the latter of their patrimony; and much is alleged concerning the remorse which it is assumed overcame Morris Bear during the latter years of his life and depressed him in no small degree because, as complainant alleges, of his maltreatment of her and her sister and brother.

Sallie Bear married Harry Kahn and died June, 1927, leaving surviving her, Harry Kahn, her husband, and two children, Jacob and Hilma. Those three answered the bill in which the material allegations of the bill were admitted. They did not answer the interrogatories propounded in the bill because they disclaimed any knowledge of the matters inquired about. It is averred that to the knowledge of Kahn, Sallie his wife, received only the sum of $7,000.00 in mortgages which were turned over to her by Max L. Bear as part of the estate of Lewis Bear. The answer admits all the allegations of the bill as to the faith which all the members of the Bear household held in Morris and Max who had been held up by their father as men of excellent ability and fine character. The answer of those three defendants shows their interests in the litigation to be like that of the complainant with whom they are in friendly accord in the suit.

The Lewis Bear Company, the corporation, demurred to the bill for laches and want of equity.

Morris Bear left two children surviving him; his daughter Hilda and son Lewis. Hilda married Robert H. Kahn. Morris appointed his brother. Max L., his son-in-law, Robert H. Kahn, and his son, Lewis Bear, as executors of his will.

The three answered the bill of complaint in their representative capacity and individually with Hilda Bear incorporating therein a demurrer to the bill. The grounds of the demurrer were among others that no equity was contained in the bill and the complainant was guilty of laches.

The demurrer of the corporation, The Lewis Bear Company, presents, in addition to the general ground of laches and lack of equity, the specific point that as a corporation, a distinct entity, it became the purchaser of the Lewis Bear business of which the complainant had knowledge, so that by the long years of acquiescence by her she is estopped now to question the corporation's right to the property and that it is not a proper party to the suit as no claim lies against it in her behalf; that the statute of limitations applies to her claim and that the administraor of Lewis Bear's estate and not the complainant acquired whatever right or interest Lewis Bear had at his death in the business of Lewis Bear & Company.

·. The demurrer of the Executors of Morris Bear's will emphasize the points that the claim of the complainant is stale, barred by laches and acquiescence, and no justification or excuse is shown for neglecting to pursue her remedy for more than twenty-five years; that due to her delay the facts have been obscured by lapse of time so that it is apparent that a court of equity cannot undertake to grant relief without doing injustice to the defendants and the estate of Morris Bear; that whatever interest Lewis Bear had in the

partnership at his death passed to his administrator and to which the complainant had no title and the surviving partners were accountable in law only to his administrator.

. The answer of the three representatives of Morris Bear and the daughter deny that Lewis Bear had a half interest in the business of Lewis Bear & Company at the time of his death; that his interest was as represented in the contract of February, 1895, and not otherwise; that when Lewis Bear died the partners paid over to Morris Bear, as administrator of the estate, all the sums of money with which they could be charged by reason of Lewis Bear's interest in the business. It is averred that A. Greenhut had an interest as partner in the business and was not engaged under any contract with the Bears and denied that when the interest of Greenhut was purchased that it was paid for with the funds and assets of the business.

. The substance of the defense as set forth in the answer is that Lewis Bear had no interest as a partner in the business of Lewis Bear & Company, which was a copartnership composed of Morris and Max Bear and A. Greenhut, but that the interest was in the nature of an investment to the extent of fifty thousand dollars upon which interest at a certain rate was agreed to be paid from the profits of the business; that on the death of Lewis Bear the partners turned over to Morris Bear as administrator a sum of money equal to the interest in the business held by Lewis Bear; that Greenhut's interest as a partner was purchased by Morris and Max and not with any part of the fund belonging to Lewis Bear's estate; and that the corporation which was formed in 1901 was formed by Morris and Max Bear and to it when formed the business of the copartnership owned by them exclusively was sold and transferred; that Morris Bear as administrator made full accounting of his father's estate and was discharged as such, and that he made

a full settlement with the complainant of her interest in the estate; that the interests acquired by Morris Bear and Max L. Bear in the business originally when they first came into it respectively was acquired by them not by way of an advancement from their father as their prospective share of his personal estate. It is averred that Morris bought and paid for his interest, while Max Bear denies that his father gave him the interest which he held in the business.

The answer denies the practice of any fraud or deception upon the complainant; denies her alleged conversations with Morris Bear in which he was alleged to have practiced such deception upon her; denied promising any settlement or accounting and denied that they admitted she had an interest in the business and urged her to allow it to remain.

In explanation of the payment to complainant of one hundred dollars per month for a long period of time, it is averred that about ten years before the filing of the bill the complainant found herself in "straitened circumstances," which is interpreted to mean that her financial condition was so unsatisfactory as to embarrass or oppress her, and so her brothers, Morris and Max, gave her the stipend as a gratuity and during that period made several other donations which the complainant accepted as such; that they discontinued such donations when they learned that the complainant had set up a claim that she was being defrauded by her brothers.

The answer continues at great length after the pattern of the bill in its repetitions and denials of alleged matters of fact constituting what complainant conceives to be evidence of her rights and the deception of the defendants.

The demurrer of the Lewis Bear Company was overruled and it interposed its answer. It likewise and in much the same manner of pleading denied all liability to an accounting and averred that as a corporate entity it became the

owner by purchase in 1901 of the business of Lewis Bear & Company. It averred that Morris Bear fully administered upon the estate of Lewis Bear and was discharged. That answer avers that the estate of Lewis Bear was appraised at fifty-two thousand dollars and was administered and the administrator discharged, all of which the complainant knew and acquiesced in without complaint or protest of any character.

From that point the pleadings begin anew. Motions and demurrers, amendments to the bill of complaint, objections to the filing of exceptions to the answers, and objections to filing demurrers to answers, objections to the filing of amendments to the bill, orders on these objections, motions and demurrers and another answer and demurrer of the Lewis Bear Company to the bill of complaint as amended and then another joint and several demurrer and answer by Max Bear, Robert Kahn and Lewis Bear in both their representative and individual capacities; then exceptions to the answer and at last came the taking of testimony before both Judges Honorable A. G. Campbell and Honorable J. L. Fabisinski of the Circuit Court for Escambia County.

The testimony was taken on two days and the cause came on for final hearing before the two judges on all the pleadings and testimony and the cause "fully argued by counsel." The court found the equities to be with the defendants and dismissed the bill at the cost of complainant. The order recites that "whereupon the complainant asked leave to take and proffered for the testimony which leave was refused and the proffer of testimony overruled." From which decree the complainant appealed.

We have carefully examined all the pleadings and the testimony exhibited by the record and the court's orders on the admission and rejection of evidence and we have concluded that the decree was correct and should be affirmed.

In deference to the ability of the able counsel engaged in this case and the earnestness and sincerity with which they presented the case both before the two Chancellors and this Court, we have undertaken, as briefly as the lengthy pleadings would permit, a succinct statement of the case as made by the pleadings and evidence to the end that it may serve not only to satisfy counsel who have as we have said not only exhibited very great earnestness and a high degree of sincerity in representing their clients but who have evidently as their lengthy briefs indicate expended much money in research among the books to justify their respective positions, but that we may indicate as clearly as may be the reason for the conclusion reached by us.

We conceive the complainant's case to rest upon two allegations of fact; one that Lewis Bear, long prior to his death, advanced to his two sons' their expectant proportions of his personal estate by giving to each at different times a one-fourth interest in the business which he established; the other that Lewis Bear retained a partnership interest in the business equivalent to a half which at his death was not so treated by his administrator and Max L. Bear, but regarded merely as an investment interest on which he drew during his life six per cent. interest from the profits of the business and upon his death that interest was withdrawn from the business, paid over to his administrator and by him divided between all five of the children of the deceased.

It is contended that as the gifts of Lewis Bear to his sons Morris and Max were advancements to them of their prospective interests in his personal estate, and that as he retained a half interest in the business, that interest was for the ultimate benefit of complainant and her sister Sallie and brother Jake which was used by the partners Morris and Max Bear to build up a great business lucrative to a degree

and from which they earned each for himself a large fortune, which it is contended being true the complainant and her sister and brother should derive proportionate financial benefits from the increase of their father's interests in the business, because in that situation Morris and Max Bear were trustees of a fund which in equity and good conscience was owned by the complainant and her sister and brother and held by Morris and Max Bear for their use and benefit.

All other allegations and averments contained in the bill and amendments and answers and amended answers are mere evidentiary matters more or less material and relevant upon the affirmative and negative sides.

The probative force of some of the incidents and transactions occurring between the complainant and two brothers, Morris and Max Bear, during the many years intervening the death of Lewis Bear and the beginning of this suit may appear very strong as to the deception and fraud alleged to have been perpetrated by Morris and Max Bear but to other minds such incidents are perfectly consistent with honesty and good intention on the part of the brothers. Such was evidently the view entertained by the two Chancellors.

The complainant was married at or about the time of her father's death, about thirty years before this suit was brought by her. She participated with knowledge of her husband in the distribution of her father's estate as the same was appraised and of record. For twenty years no protest was made in the courts. In the meantime the two brothers through their acknowledged business ability brought their business to a success and they enjoyed the benefits accruing from their thrift and able management while misfortune overtook the sister complainant in the case in the loss of her husband and unsuccessful investments, so that she became in a way dependent upon her brothers, who advanced to her out of their bounty the sum of one hundred

dollars per month. That gratuity continued for ten years, when she decided to reopen the matter of the settlement of her father's estate:

The Chancellors evidently held that the interest of Morris and Max Bear in the copartnership was not acquired by way of an advance to them by their father of their prospective interest in his personal estate and that at his death he did not have a partnership interest in the business but only a certain investment interest which was turned over to his administrator, listed among the assets of his estate, and duly administered and each child's share paid over.

In that conclusion we find no error, and following a long line of decisions by this Court that it will not reverse the Chancellor on his finding of fact unless the error is clearly apparent, we affirm the decree.

Affirmed.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.